**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LEROY WILLIAMS,**

        **Plaintiff,**

**v.**                                                **Case No.  8:06-cv-1260-T-TBM**

**MICHAEL J. ASTRUE,[1]**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits and Supplemental Security Income payments.  For the reasons set out herein,

the decision is affirmed.


**I.**

Plaintiff was 57 years of age at the time of his administrative hearing in September

2004.  He stands 6' 1" tall and weighed 203 pounds.  Plaintiff has a tenth grade education with a

GED.  His past relevant work was in construction, concrete/masonry work, and as a selector and

loader at a lumber yard.  Plaintiff applied for Social Security disability benefits and

Supplemental Security Income payments in June 2002, alleging disability as of August 1, 2001,

---

[1]Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should
be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

by reason of a hernia, back pain, hepatitis C, and blindness in his left eye.[2]  The Plaintiff's

applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative

Law Judge ("ALJ").  The Plaintiff was represented at the hearing by counsel and testified in his

own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff

testified that he stopped working in February 2001, after he strained himself and developed a

hernia.  By his account, things went downhill from there; he hurt his back, and his appendix

burst.  Although his hernia was repaired, he claims continued pain when he walks for any length

of time or when he lifts anything.  The pain occurs in his groin and backside and sometimes in

his back when he lifts items.  Plaintiff is blind in his left eye and claims that everything has been

a blur for five or six years.

Additionally, Plaintiff has received treatment at the VA for psychiatric issues.  By his

account, he suffers nightmares and has been diagnosed with post traumatic stress disorder

("PTSD").  He sees a psychiatrist and takes medication for the condition.  He indicates that

treatment has helped some, but he has become withdrawn and does not socialize because he

does not feel comfortable around people.  He indicates that his temper is not so good, and at

times he is left debilitated by his medication and as a consequence cannot focus.  In questioning

by the ALJ, Plaintiff acknowledged that the had been in rehab treatment for alcohol and cocaine

abuse in 2003.  He claims the problem has cleared up and he only occasionally goes to AA

meetings.

---

[2]It appears that the alleged onset date was amended to December 27, 2001, on request
of the Plaintiff's counsel.

He has also received treatment for hepatitis C.  He takes Ribovarin and Peg Interfuron. These medications make him sleepy and very sick, as if he has the flu.  At times, his medication causes constipation as well.

By Plaintiff's account, he can lift twenty to twenty-five pounds.  He can stand for twenty to thirty minutes and can sit for an hour or so.  When he walks, after a block and a half, he feels excruciating pain.  While he acknowledges that he can reach up and down, he cannot do this too often.  On a daily basis he watches his grandchildren and mainly sits around the house. He does some light household chores like washing his clothes.

Plaintiff visits the VA for treatment twice a month.  He has a 50% service-connected disability.  (R. 447-62).

The ALJ next took testimony from Theresa Manning, a vocational expert ("VE"). Initially, the VE testified that the Plaintiff's past work in construction was very heavy, unskilled work, and his warehouse work, as well as the lumber yard work was medium unskilled work. The VE testified on an assumption on an individual of Plaintiff's age, education, and work experience with the residual functional capacity ("RFC") for medium exertional work, with an occasional limitation for concentrating on tasks assigned and interacting with the public, and with frequent limitation for performing tasks requiring depth perception, but capable of doing routine, repetitive tasks.  On this hypothetical, the VE opined that Plaintiff could perform jobs as a grocery bagger, janitor, and packer.  Counsel for the Plaintiff had no questions of the VE regarding these opinions.  (R. 462-63).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of March 24, 2005, the ALJ determined that while Plaintiff has severe impairments related to status post appendectomy, inguinal hernia repair, poor visual acuity in the left eye, PTSD, and depression, he nonetheless had the residual functional capacity to perform medium exertional work with limitations for avoiding work requiring depth perception, work requiring more than occasional interaction with the general public, and limited to simple, repetitive tasks. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 15-23). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits or Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

4

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

 The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards

were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler,

704 F.2d 1207, 1209 (11th Cir. 1983).


                                        III.

        The Plaintiff raises three claims on this appeal.  As stated by the Plaintiff, they are as

follows:

        (1) The ALJ erred when he failed to give proper weight to the opinions of Claimant's

treating physicians and the examining Social Security psychologist and instead relied on the

opinion of a non-treating examining Social Security doctor;

        (2) The ALJ failed to properly consider the combined effects of Claimant's

impairments and subjective complaints; and

        (3) The ALJ failed to properly develop the record by posing a complete and

comprehensive hypothetical to the vocational expert.

        By his first claim, Plaintiff urges that the ALJ failed to give proper weight to the

opinions of his treating physicians and instead relied upon the opinions of a  non-examining

doctor in fashioning the Plaintiff's RFC assessment for medium work.  In this circuit, when

considering a treating physician's testimony, the ALJ must ordinarily give substantial or

considerable weight to such testimony unless good cause is shown to the contrary.  Broughton v.

Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. § 1527(d)(2).  Furthermore, the

ALJ must specify the weight given to the treating physician's opinion or reasons for giving the

opinion no weight, and the failure to do so is reversible error.  In this circuit, where the

Commissioner has ignored or failed properly to refute the treating physician's testimony, such

testimony, as a matter of law, must be accepted as true.  MacGregor v. Bowen, 786 F.2d 1050,

1053 (11th Cir. 1986).  Such a preference is given to treating sources because such sources are

likely to be best situated to provide a detailed and longitudinal picture of the medical

impairments.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for

rejecting a treating source's opinion may be found where such opinion is not supported by the

evidence or where the evidence supports a contrary finding.  Id.; Schnorr v. Bowen, 816 F.2d

578, 582 (11th Cir. 1987).  Here, Plaintiff complains that the ALJ violated this standard by

improperly relying upon the RFC assessment completed by Carolyn Moore, a non-examining,

reviewing doctor in lieu of the opinions of Plaintiff's treating doctors, George Gadea, Susan

Sharma, and Charles Matthews, and a consulting examiner, Peter Burst.[3]

        Plaintiff initially cites to the records from Dr. George Gadea, who treated Plaintiff in

2002.  See (R. 152-66).  By his argument, Dr. Gadea's records supported that his mental

condition significantly interfered with his daily functioning, and he was subject to frequent

flashbacks to wartime traumatic events.  In Dr. Gadea's view, Plaintiff might be able to perform

light labor type work.  Plaintiff complains that while the ALJ reportedly gave Dr. Gadea's

opinion great weight and adopted his opinion on Plaintiff's cognitive functioning, he otherwise

ignored significant findings.  He urges that under this circuit's precedent, the opinion of this

doctor could not be discounted on the basis of Dr. Moore's RFC.

---

[3]Dr. Moore's RFC assessment found Plaintiff capable of medium exertional work with
limitations related to poor vision in his left eye.  See (R. 211-18).

Plaintiff further complains that the ALJ failed to state reasons for rejecting the opinions of Dr. Sharma[4] and Dr. Matthews,[5] Plaintiff's "treating" psychologists at the VA. By this argument, both found him to suffer significant mental impairments by reason of his PTSD, and yet the ALJ does not even discuss Dr. Matthew's assessment. Again, he urges there was no contrary evidence concerning Plaintiff's mental condition except that from the non-examining reviewing doctors[6] and thus no good cause to reject these treating doctors' opinions.

---

[4]Susan Sharma performed an outpatient psychiatric evaluation on November 4, 2002, and diagnosed PTSD; alcohol and cocaine abuse/dependence, in partial and early remission, respectively; hepatitis C; status post surgeries for ruptured appendix, right inguinal hernia, and prostate resection; GERD; homelessness; limited income; and possible inadequate social support, with a GAF of 55. (R. 362). She recommended Plaintiff for evaluation in the Alcohol and Drug Abuse Treatment Program ("ADATP") and that he apply for care to the PTSD program. See (R. 361-63).

[5]Charles Matthews, Ph.D., conducted a psychological evaluation of Plaintiff on October 2, 2003 on a referral from ADATP. (R. 268-75). His diagnostic impressions included PTSD; depressive disorder NOS (rule out substance induced); psychotic disorder NOS; cocaine and alcohol dependence; intermittent explosive disorder; adult antisocial behavior; hepatitis C; GERD; homelessness; medical, economic, and limited social support; and a GAF of 50. His report outlines concerns about the validity of some results, the impact of drug and alcohol abuse on Plaintiff's functioning, and a number of areas of functioning where Plaintiff would likely have some problems. He too recommended Plaintiff for further treatment in the program. See (R. 268-75).

[6]In November 2002, Dr. Timothy Foster, Ph.D., assessed Plaintiff to suffer from affective disorder/depression, anxiety-related disorder related to recurrent and intrusive recollections of a traumatic experience, and substance addiction disorder (in remission). He found Plaintiff suffered mild restrictions of activities of daily living; moderate restrictions in maintaining social functioning and in concentration, persistence, and pace; and moderate to severe restrictions in adaptation and coping with stress. (R. 171-88). In January 2003, another  non-examining doctor similarly assessed Plaintiff as mildly limited in concentration and persistence, moderately limited in his ability to complete a normal workday and workweek without interruptions, in his social interactions/ability to accept instructions and respond appropriately and in adapting to and responding appropriately to changes in the workplace by reason of anxiety-related disorder and substance addiction disorder. See (R. 189-206).

Finally, Plaintiff complains the ALJ failed to discuss the psychological evaluation by Peter M. Burst, Ph.D., who evaluated Plaintiff in October 2002 at the request of the Commissioner.  By Plaintiff's argument, the conclusions of this consultative examiner support those of the treating doctors.[7]

After thorough review of the decision in light of the medical record, in particular the reports from the cited doctors, I conclude Plaintiff has not demonstrated reversible error on this first claim.  In particular, Plaintiff fails to demonstrate either that the ALJ did not afford these treating sources proper weight or that these doctors reported functional limitations in excess of those finally credited him by the ALJ.  As for Dr. Gadea, his notes were addressed and given great weight.  Nothing in his records or those from the Kennedy Clinic support the argument that Plaintiff was incapable of the physical demands of medium exertional work.  See (R. 152-66).  When considered in full, his reports do not reflect significant physical impairments or limitations, and the objective evidence taken from this doctor's records entirely undermines Plaintiff's claims as well.  See (R. 160-64).  Indeed, the same can be said upon a thorough review of the entire medical record, including the VA record; the reports from Dr. Matthews, Ms. Sharma, and Dr. Burst; the consultative report of Dr. Alexis Henderson; and the assessments of the state agency doctors.  (R. 151, 185-88, 189-92, 193-206, 207-10, 211-18).  Nothing cited in any of these records required a conclusion that Plaintiff could not perform the requirements of medium exertional work.  Dr. Gadea's statement on a mental health

---

[7]Plaintiff notes that Dr. Bursten found Plaintiff an emotionally disturbed individual who appeared anxious, apprehensive, and depressed secondary to PTSD.  He found it "probable" that his emotional difficulty would disrupt interpersonal functioning on a daily basis and would serve to inhibit task persistence.  See (R. 167-70).

questionnaire that "I do not feel patient can adequately perform duties involving significant cognitive or concentration functions . . ." is ultimately credited by the ALJ and accounted for in the RFC determination.

Concerning the "treating psychologists," by my review, it does not appear that either Ms. Sharma[8] or Dr. Matthew was a treating source. In any event, a review of their reports does not dictate the conclusion that the ALJ has not otherwise properly assessed the evidence and afforded it due weight. While Ms. Sharma gave several diagnoses, her report clearly suggests that Plaintiff did not suffer significant orientation, cognitive or memory deficits while his judgment was fair and his insight limited. (R. 362). Mere diagnosis of an impairment is not enough to establish disability, as such diagnosis generally says nothing about the functional limitations arising from the condition. In these matters, the issue is the severity of the impairment measured by it effect on a claimant's ability to work. See McCruter v. Bowen, 791 F. 2d 1544, 1547 (11th Cir. 1986); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Similarly, while it is correct that the ALJ did not expressly cite to the evaluation by Dr. Matthews and that by his evaluation, additional diagnoses were cited, Plaintiff fails to demonstrate the specific findings or mental functional limitations determined by this doctor's report that should have been but were not otherwise accounted for by the ALJ.

To the extent that Plaintiff claims that there was no discussion of the report of the consultative evaluation by Dr. Bursten, the decision reflects otherwise. See (R. 17). More importantly, when this doctor's report is read in full, this doctor also concludes that Plaintiff

---

[8]As suggested by the Commissioner, it appears that Sandra Sharma is a psychiatric nurse practitioner rather than a doctor. My conclusions on this first issue would be the same in either circumstance.

suffers no significant problems with orientation, intelligence, or cognitive or memory functions. While Plaintiff's emotional condition did raise concerns about his ability to relate to others and with his task persistence, Plaintiff does not demonstrate that the ALJ failed to consider those limitations or factored them properly into his RFC assessment.

Finally, by my reading of the decision in light of the entire record, the ALJ drew his conclusions about the Plaintiff's mental and physical functional limitations from the whole record, not just the non-examining doctors' reports.  On the whole, I find the conclusions by the non-examining doctors are consistent with the other evidence of record.  Thus, while the ALJ cited to the reports from the non-examining doctors, it is not at all clear that he gave them inappropriate weight.

By his second claim, Plaintiff argues that the ALJ failed to consider his impairments in combination.  He urges that the ALJ failed to give adequate consideration to his chronic left groin pain and low back pain and discuss his GERD, benign prostate hypertrophy ("BPH"), high blood pressure, and side effects from medication.  Plaintiff adds that in considering the combined effects of his impairments, the ALJ must also consider his pain and other subjective symptoms.  Here, Plaintiff maintains that in doing so the ALJ mis-characterized his testimony concerning his drug usage in concluding that it was not fully credible.  In particular, he complains that the ALJ inappropriately cited to a positive urine sample in June 2004 to contradict his claims to have been substance free since 2003.  By Plaintiff's argument, his testimony revealed that he acknowledged one instance when he had tested positive for cocaine in June 2004.  Plaintiff further complains that the ALJ committed legal error by finding the Plaintiff's PTSD must not have been severe because he was not compliant with his treatment.

11

Here Plaintiff complains that the ALJ did not determine during the hearing Plaintiff's reason for not following his prescribed treatment program.  Citing Lucas v. Sullivan, 918 F.2d 1567, 1572-73 (11th Cir. 1990), Plaintiff urges the ALJ was required to consider his homeless status, severe mental impairments, intermittent drug and alcohol problems, and borderline intelligence as reasons for his noncompliance and a remand is warranted.

Finally, Plaintiff urges that the credibility of his subjective testimony was critical to the correct decision in this case and the ALJ failed to follow the applicable standard in his review of this evidence.

The Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling.  In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.  Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). Furthermore, in this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

12

Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986)).  A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability.  Id.; Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991).

Initially, I find that to the extent that Plaintiff maintains generally that the ALJ failed to consider his impairments in combination, the decision reflects otherwise.  The ALJ noted the "specific issue is whether [Plaintiff] is under a 'disability' which is defined as the inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment or combination of impairments. . . ."  See (R. 15).  Later, he noted, "A medically determinable impairment or combination of impairments is 'severe' if it significantly limits . . ." (R. 16).  In the face of such statements, it is proper to conclude that the ALJ considered the combination issue.  See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991)).  The decision also reflects the ALJ's recognition of Plaintiff's subjective testimony and his obligation to review the same under the regulatory standard at 20 C.F.R. §§ 404.1529, 416.929.  See (R. 19-20).  Case law in this circuit holds that proper application of the regulatory standard will satisfy the circuit's "pain standard."  Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  Thus, to the extent that Plaintiff complains that the standard was not applied, the decision reveals otherwise.

By my review, the decision also reflects fair consideration of Plaintiff's medical records as they relate to his post-surgery inguinal hernia, his appendectomy, and his degenerative disk disease, his GERD and a hiatal hernia, hepatitis C, diminished vision, his BPH, his substance and alcohol abuse and the side effects of his medications as well as his depression and PTSD.  (R. 17-19).  As for Plaintiff's express complaint that the ALJ did not adequately address his groin pain or back pain, I find that there is little more the ALJ could have done with the claims on this record.  What little clinical evidence there was about Plaintiff's inguinal hernia and appendectomy indicated that the surgeries performed to correct the problems had been successful.  Contrary to Plaintiff's suggestion, there was no indication of a recurrence of the inguinal hernia.  The objective evidence related to Plaintiff's back condition indicated only mild degenerative disk disease.  Significantly, there were no records suggesting any significant limitations in connection with any of these conditions.

Similarly, while the ALJ noted the conditions, there was no indication by Plaintiff himself or by his doctors that Plaintiff's GERD or the small hiatal hernia found in connection with that condition were particularly significant or functionally limiting.  His records suggest the conditions were maintained by medication without significant side effects.  Records concerning his BPH did not call for further discussion.  While there was some complaint about one of the medications used to treat this condition, that was promptly addressed, and I can find no evidence of any functional limitations indicated from this condition either.

As the ALJ noted, a consideration of the VA treatment records concerning Plaintiff's hepatitis C and the side effects of his medication/treatment revealed that he tolerated it well

14

without undue depression, fatigue, or sickness.[9] (R. 18-19).  My review of the VA records

supports the ALJ's conclusions concerning this condition and undermines Plaintiff's complaints

of disabling fatigue or illness in connection with this hepatitis C treatment.  On the whole, these

notes reflect that Plaintiff tolerated the treatment well with limited side effects.  Indeed, during

2004, when this treatment occurred, the records show Plaintiff maintaining well in all areas with

only limited complaints.  See (R. 379-421).

Under the applicable standard, the ALJ may discount a claimant's subjective

complaints by stating adequate and explicit reasons for doing so.  Upon my review, the ALJ's

conclusion that Plaintiff's testimony concerning his physical limitations was inconsistent with

the medical evidence, which generally noted good strength and mobility on physical

examination, and his finding of no objective evidence to support the extreme limitations of

physical capacity described by the claimant is supported by the substantial evidence.

As for Plaintiff complaint that the ALJ inappropriately discounted his testimony

because he was untruthful about his drug usage, I agree with the Plaintiff that he did reveal at the

administrative hearing that he had fallen off the wagon one time in the year preceding the

administrative hearing because of his girlfriend and to the extent that that testimony may have

related to the positive test result in June 2004, upon which the ALJ relied as a basis for

discrediting him, the ALJ was incorrect.  However, any error was harmless.  In the final analysis,

the Plaintiff's credibility was undermined most significantly by his medical record and the lack

_____

[9]The ALJ also noted that Plaintiff had no complaints of side effects from the Paxil or
Zyprexa, which he was taking for his depression and PTSD.  (R. 18).  By my review, there are
a number of entries supporting this finding.  See, e.g., (R. 221, 227, 244, 251, 257, 282, 288,
321, 361, 387, 392, 393, 396, 399, 404).

of proof of significant functional limitations.  The medical record here did not require a

conclusion that he suffered from disabling symptoms.  As the decision reveals, the ALJ

ultimately did not reach the issue of whether Plaintiff's drug or alcohol abuse made a difference

to his claim.[10]  (R. 21).  Further, even if Plaintiff abstained for drugs as he claimed, as the ALJ

noted, there were other instances revealed in the VA record, indicating that Plaintiff did not

entirely abstain from the use of alcohol.  I cannot conclude that this one finding, even if

incorrect, requires a remand, which otherwise would serve no useful purpose.

          As for Plaintiff's complaint that the ALJ should not have discounted his PTSD[11] by

reason of his lack of treatment compliance, I reach a similar conclusion.  First, the comment has

to be considered in the light of other findings concerning the condition.  Further, the finding by

the ALJ that Plaintiff had missed almost all of his appointments for treatment is entirely

accurate.  While Plaintiff suggests the ALJ was obliged under Lucas to explore the reasons for

his noncompliance further, the record fairly well provides the answer without the need for

further inquiry.  At least through September 2003, Plaintiff was still abusing drugs or alcohol

and did not choose to participate in either the PTSD program or ADATP.  As the ALJ also

found, Dr. Glenn Smith stated that issues of substance abuse were negatively impacting

Plaintiff's ability to successfully engage in treatment for PTSD.[12]  (R. 347).  The records reflect

---

          [10]If it had, it is quite apparent from a review of the VA records that Plaintiff's claim
would have been in jeopardy under Public Law 104-121.

          [11]At his hearing, Plaintiff claimed the condition caused him to have nightmares; hear
voices; become withdrawn, feel uncomfortable around people, and at times become ill-
tempered; and become absent-minded because of his medication.

          [12]The note indicated that Plaintiff claimed that he worked until 2:00 (and could not get
in for evaluation) even though he was advised ADATP stayed open until 3:00.

that he was deemed inappropriate to participate in the PTSD program until he could successfully complete ADATP.  Plaintiff's suggestion that he was homeless throughout this whole period is not borne out by the record.  At times, the records indicate he had a good support system in place.  Moreover, the VA offered him assistance in ways intended to facilitate his enrollment.  On the whole, the record supports that Plaintiff was fully capable of making informed choices and did so during this period of treatment.  Thus, the conclusion that had his PTSD been as severe as claimed, he would have sought the treatment is not entirely unsupported as Plaintiff suggests.

Further, there were other findings by the ALJ concerning Plaintiff's mental state that played a role in the decision to discount PTSD as a disabling condition.  The ALJ also noted that the records indicated that Plaintiff entered ADATP in September 2003 and that he did reasonably well in the program and was discharged for follow-up (in October 2003).  See (R. 18, 221-316).  Thereafter, the records show he made some follow-up appointments and missed some, however, as the ALJ further noted in October 2003, he reported doing well and from January through September 2004, Plaintiff's mood remained relatively stable, he reported he was sleeping better with fewer nightmares, and he had less irritability and feelings of hopelessness.  (R. 18, 387-90, 392, 396-99, 403-05).  As discussed above, the reports of other doctors revealed no significant orientation, cognitive, or memory deficits and findings of fair judgment but limited insight.  When all the records are considered, as they were by the ALJ, Plaintiff's claims of disabling limitations from PTSD are simply unsupported.  To the extent that the doctors suggested functional limitations based on Plaintiff's mental condition, the ALJ credited them in his RFC and in his questioning of the VE.

17

In sum, the cited reason for discounting Plaintiff's PTSD is not entirely unsupported, and significantly, Plaintiff makes no demonstration from the record of other limitations from this condition that should have been determined by the ALJ but were not.  A remand for further review of this medical record as proposed by the Plaintiff would serve no useful purpose.  There is simply no support apart from the Plaintiff's claims that the PTSD caused greater functional limitations than those assessed by the ALJ.

Regarding his final claim, Plaintiff argues that the ALJ's conclusion that he could perform a limited range of medium work is not supported by substantial evidence.  Plaintiff argues the ALJ's hypothetical to the VE which allowed for medium work with restrictions did not comprehensively include all of Plaintiff's impairments or accurately reflect the severity of those impairments.  In particular, Plaintiff complains the hypothetical ignores his mental impairments, the side effects of his medication, the notations by Dr. Gadea that Plaintiff might be able to do light work, and the notes by Dr. Burst concerning the limiting effect of his emotional difficulties on his interpersonal functioning and task persistence.  He also urges that the hypothetical ignored the complaints of nausea, fatigue, drowsiness, and joint pain from his interferon treatments, and the limitations in standing, walking, bending, and lifting due to his left groin and back pain.

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions that are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert

18

testimony, is unsupported by substantial evidence.  Id. at 1562 (quoting Brenem v. Harris, 621

F.2d 688, 690 (5th Cir. 1980)).  Here, however, as suggested by my findings and conclusions

above, I have concluded that the ALJ fairly assessed Plaintiff's mental limitations, the side

effects of his medication, and his alleged physical limitations and that his hypothetical question

to the VE  adequately addressed those limitations.[13]  In this circuit, the ALJ is "not required to

include findings in the hypothetical that the ALJ [has] properly rejected as unsupported."

Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).  Given the VE's

testimony, the conclusions by the ALJ that Plaintiff could perform jobs and was not disabled is

supported by substantial evidence.


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is otherwise

supported by substantial evidence.  The decision is affirmed.  Accordingly, the  Clerk is directed

to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 27th day of September 2007.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of record

---

[13]Here, it is worth noting that Plaintiff's counsel, who represented him at the hearing, was given a fair opportunity to question the VE and to develop additional expert testimony, but he declined to do so.

19